Iris **RICHARD** et al., Plaintiffs,

v.

**BELL ATLANTIC CORP.** et al., Defendants.

Renee Arrington et al., Plaintiffs,

v.

Bell Atlantic Corp. et al., Defendants.

Nos. CIV.A.96–2168(RMU), CIV.A.99–2380(RMU).

United States District Court, District of Columbia.

Feb. 27, 2002.

John W. Hermina, George W. Hermina, Hannibal G. Kemerer, Hermina Law Group, Laurel, MD, for Plaintiffs.

Vincent H. Cohen, Harry T. Jones, Jr., Hogan & Hartson, L.L.P., Washington, DC, for Defendants.

## MEMORANDUM OPINION

DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF DENISE WALTON

URBINA, District Judge.

## I. INTRODUCTION

These race-discrimination and· retaliation cases began with 132 current and former employees of Bell Atlantic Corp. (now Verizon) suing their employer and its subsidiaries (collectively, "the defendants" or "Bell Atlantic") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Although the court has not consolidated these two cases, they have been mediated and briefed together because of the similarity in claims, counsel, and parties.[1] Through the diligence and persistence of the parties, the lawyers, and an Alternative Dispute Resolution firm, 132 plaintiffs became three.

On September 7, 2001 and September 14, 2001, this court issued Memorandum Opinions and Orders on the claims of two of the three remaining litigants. *See Richard v. Bell Atlantic,* 165 F.Supp.2d 1 (D.D.C.2001); *Richard v. Bell. Atlantic,* 167 F.Supp.2d 34 (D.D.C.2001). In these Memorandum Opinions, the court granted the defendants' motion for summary judgment on all claims of Kay Young and Carolyn Green. *See id.* On September 24, 2001, at the parties' request, the court issued an order briefly staying the proceedings in this matter to give the parties additional time to reach a settlement on the claims of the one remaining plaintiff, Denise Walton. *See* Order dated September 24, 2001.

In early January, 2002, the parties informed the court that they could not reach a settlement and the court lifted the stay on the litigation. The court now turns to the defendants' motion for summary judgment on all claims of Denise Walton ("the plaintiff" or "Ms. Walton"). For the reasons that follow, the court will deny in part and grant in part the defendants' motion.

## II. BACKGROUND

At the time of her termination on May 17, 1996, Ms. Walton, an African–American, had been a Bell Atlantic employee for more than 20 years. *See* Compl. ¶ 172; Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 2. During her tenure with Bell Atlantic, Ms. Walton held several different positions. She served as a General Clerk

---

1. In the *Richard v. Bell Atlantic Corp.* case, Dkt. No. 96cv2168, there were originally 127 plaintiffs. In the *Arrington v. Bell Atlantic Corp.* case, Dkt. No. 99cv2380, there were originally 21 plaintiffs, all but five of whom were also plaintiffs in the *Richard* case. Thus, there were initially a total of 132 plaintiffs.

from 1987–1989 before a promotion to Service Representative on July 8, 1989. *See* Defs.' Mot. for Summ. J. ("Mot. for Summ. J.") at 3; Walton Dep. at 11. On November 27, 1993, the company promoted Ms. Walton a second time, to the position of Service Technician, where she served until the company fired her in 1996. *See* Mot. for Summ. J. at 3; Walton Dep. at 14–15.

On December 28, 1994, while employed as a Service Technician, Ms. Walton suffered an on-the-job injury when an unsecured shelf fell on her, injuring her head, neck, and shoulder. *See* Mot. for Summ. J. at 3; Walton Dep. at 18. The injury caused Ms. Walton to miss work from January 4, 1995 until July 5, 1995, when she returned to work on "light duty." *See* Mot. for Summ. J. at 4; Walton Dep. at 50. On September 15, 1995, Ms. Walton suffered a relapse of her injury, causing her to miss work until May 8, 1996. *See* Mot. for Summ. J. at 4; Walton Dep. at 27–29. The nature of the injury and the amount of work missed resulted in a dispute between Ms. Walton and Bell Atlantic's Health & Safety Management Center. *See* Mot. for Summ. J. at 5. During this dispute, Ms. Walton received a letter notifying her that if she did not return to work, the company would fire her for abandoning her job. *See* Mot. for Summ. J. at 5 (citing Def. Ex. 12); Walton Dep. 64–65, 67. Because of the dispute, Ms. Walton's supervisor recorded her absence from work as "time excused without pay." *See* Mot. for Summ. J. at 5 (citing Def. Ex. 16).

On April 30, 1996, Ms. Walton's physician notified Bell Atlantic that Ms. Walton could return to work on May 1, 1996, subject to specific restrictions such as no lifting, bending, or exposure to cold temperatures. *See id.* at 6 (citing Def. Ex. 17). In addition, the doctor's orders restricted Ms. Walton from driving for longer than 15 minutes at a time. *See id.* at 7 (citing Def. Ex. 21). At this time, the company again notified Ms. Walton that if she did not return to work by May 8, 1996, it would fire her for abandoning her job. *See id.* at 6 (citing Def. Ex. 18); Walton Dep. at 76–77. Ms. Walton did return to work on May 8, 1996 and immediately notified her supervisor that because of her driving restriction she did not have adequate transportation to work and would therefore miss work on May 10.[2] *See id.* Ms. Walton did not appear at work after May 10, 1996 and the company fired her on May 17, 1996. *See id.* at 7 (citing Def. Ex. 24).

The parties dispute the reason for the termination. Ms. Walton claims that Bell Atlantic discriminated against her because of her race "by failing to make an accommodation for her disability." *See* Pl.'s Opp'n at 3. Specifically, Ms. Walton claims that not only did she request an assignment closer to her home that the company denied, but also that Bell Atlantic accommodated a white employee, also on disability, and did not terminate her. *See id.* at 4–5. The defendants deny these allegations, asserting that they properly termi-

---

**2.** Exhibits provided by both parties indicate that Ms. Walton's home address is in Silver Spring, Maryland, and her work address at the time of termination was in Herndon, Virginia. *See* Mot. for Summ. J. Ex. 12–13; Pl.'s Opp'n Ex. 4–5. The court has the authority to take judicial notice of information contained within the public domain, such as the distance between two locations. *See Starr v. J. Hacker Co.,* 688 F.2d 78, 81 (8th Cir.1982) (affirming the trial court's decision to take judicial notice of the fact that New York City is more than 100 miles from Nebraska); *Ikerd v. Lapworth,* 435 F.2d 197, 205 (7th Cir.1970) (affirming the trial court's decision to take judicial notice of the fact that Madisonville, Kentucky is more than 100 miles from Terre Haute, Indiana). In this case, the court takes judicial notice that the distance between Ms. Walton's home and her place of employment is 32 miles. *See Mapquest.com* (visited January 24, 2002) <http://www.mapquest.com>.

nated Ms. Walton for job abandonment. *See* Mot. for Summ. J. at 10. The defendants state that they informed Ms. Walton that a transfer to a location closer to home was not "immediately possible." *See id.* at 9. The defendants declare that Bell Atlantic accommodated Ms. Walton's work restrictions while she was at work, but admit that they did not try to accommodate her disability during her commute to and from work. *See id.* at 9. The defendants submit that they are not required by law to make accommodations for an employee's commute to and from work. *See id.* at 10. Finally, the defendants dispute the claim that they treated a similarly situated white employee differently than Ms. Walton. *See id.*

In addition to her discriminatory termination claim, Ms. Walton makes several other allegations against Bell Atlantic. First, Ms. Walton claims that she was subjected to numerous actions that created a hostile work environment, which would never have occurred had she been white.[3] *See* Pl.'s Opp'n at 6. Second, Ms. Walton alleges that her failed applications for Central Office Technician ("COT") positions constitute a discriminatory failure to promote. *See id.* Ms. Walton claims that she sat for the required Electronic Systems Minicourse ("ESMC") examination and received a qualifying score. *See id.* According to Ms. Walton, however, Bell Atlantic

never contacted her for any interviews. *See id.* In addition, Ms. Walton charges that "she is aware of white individuals who were promoted to COT during the period when she was qualified." *Id.* (citing Walton Dep. at 109). Finally, Ms. Walton claims that the defendants discriminatorily denied her on-the-job training on the basis of her race. *See* Compl. ¶ 173.

Bell Atlantic denies all these allegations. In brief, the company argues that Ms. Walton's claims fail to meet the legal standard for a hostile work environment, that the statute of limitations bars her claims regarding the denial of promotions, that she did not receive a qualifying score on the ESMC, and that, to the extent Ms. Walton sought promotions to management, she did not take the proper tests required at the time.[4] *See* Mot. for Summ. J. at 11–15. Finally, in terms of the discriminatory denial-of-training claim, Bell Atlantic contends that Ms. Walton makes no specific allegations about similarly situated white individuals who received training that she did not. *See id.* at 16.

The defendants now move for summary judgment on all claims of Denise Walton.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to in-

---

3. Ms. Walton asserts that any combination of the following constitutes a hostile work environment: "(a) denial of overtime that was exclusively doled out to less senior Caucasians; (b) denied promotions; (c) taken off payroll; (d) denied benefits; (e) repeatedly threatened with termination; (f) denied a reasonable accommodation of a transfer of work locations; and (g) pretextually accused of abandoning her job." Pl.'s Opp'n at 6. Ms. Walton also claims that the company's actions created a hostile work environment because after the company fired her, it hired a private investigator to follow her. *See id.* (citing Pl.'s Ex. 10).

4. According to Bell Atlantic, at the time in question, promotion to a management position required applicants to take the Business Management Abilities Test ("BMAT"). *See* Mot. for Summ. J. at 15. To be qualified for the position of Communications Representative, applicants were required to take either the Situational Judgment Inventory–Marketing test or the Customer Contact Selection Interview. *See id.* The defendant claims that Ms. Walton did not take either of these examinations and that therefore the company would not have considered Ms. Walton for the Communications Representative position. *See id.*

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C.Cir.1997); *see also Johnson v. Digital Equip. Corp.*, 836 F.Supp. 14, 18 (D.D.C.1993).

### B. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima-facie case of discrimination. Second, if the plaintiff succeeds in proving the prima-facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089,

67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir. 1998) (en banc); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 140–143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As a general matter, a prima-facie case of discriminatory denial of promotion based on race consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir. 1981).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *See McDonnell Douglas*, 411 U.S. at 802–805, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine*, 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See. id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'" and that the plaintiff's membership in a pro-

tected class was the true reason for the employment action. *Reeves*, 530 U.S. at 142–144, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves*, 530 U.S. at 142–144, 120 S.Ct. 2097; *Aka*, 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima-facie case and inferences properly drawn therefrom … on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 142–144, 120 S.Ct. 2097 (citing *Burdine*, 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin*, 116 F.3d at 1554. In *Aka*, the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka*, 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima-facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka*, 156 F.3d at 1289.

In *Reeves*, the Supreme Court reaffirmed the principles set forth in *Aka*. Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima-facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves*, 530 U.S. at 147–149, 120 S.Ct. 2097; *see also Aka*, 156 F.3d at 1289. Lastly, the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir. 1996) (citing *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C.Cir.1982)); *see also Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin*, 116 F.3d at 1556 (quoting *Fischbach*, 86 F.3d at 1183). "It is not enough … to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Applying these legal standards to the instant case, the court denies in part and grants in part the defendants' motion for summary judgment.

### C. The Plaintiff's Claims

The plaintiff makes four claims against the defendants: (1) discriminatory termi-

nation; (2) hostile work environment; (3) discriminatory failure to promote; and (4) discriminatory denial ·of on-the-job training. The court grants the defendants' motion for summary judgment on the claims pertaining to a hostile work environment and on-the-job training. In addition, the court denies the defendants' motion for summary judgment on the claims involving discriminatory termination and discriminatory failure to promote.

### 1. Discriminatory Termination

■ The plaintiff contends that Bell Atlantic fired her on May 17, 1996 on the basis of her race because the defendants failed to make a reasonable accommodation for her disability. *See* Pl.'s Opp'n at 3. The claim of racial discrimination based on failure to accommodate a disability is rooted in the well-established principles found in *McDonnell Douglas. See* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This circuit has held, in cases involving the disparate treatment of individuals, that the prima-facie "criteria are 'flexible' and must be adjusted to the facts at hand." *See Harding v. Gray*, 9 F.3d 150, 152 (D.C.Cir.1993). In addition, courts must be "guided by the necessity of a showing that the employment action was taken 'under the circumstances that give rise to ᵏ an inference of discrimination.'" *Waterhouse v. District of Columbia*, 124 F.Supp.2d 1, 5 (D.D.C.2000) (quoting *Harding*, 9 F.3d at 152). Given the facts and circumstances of this case, the court adopts the specific test for discrimination based on a failure to accommodate a disability on the basis of race set forth in *Dorchy v. Washington Metro. Area Transit Auth. See* 45 F.Supp.2d 5, 14–15 (D.D.C.1999). In *Dorchy*, the court held that to establish a prima-facie case of discriminatory termination, the plaintiff must show that:

> (1) he is a member of a protected group; (2) that he has a disability; (3) that he requested an accommodation for his disability; (4) that his employer failed to make a reasonable accommodation for his disability; and (5) that other similarly-situated employees who were not members of a protected group were given accommodations for their disabilities.

*Dorchy*, 45 F.Supp.2d at 14–15 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

Under the burden-shifting analysis of *McDonnell Douglas*, the plaintiff must first establish a prima-facie case. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The court rules that Ms. Walton has sufficiently met all five requirements of the prima-facie case. Neither party contests that Ms. Walton is a member of a protected class (African–American), that she has a disability, and that she requested an accommodation for that disability, i.e., that the company transfer her to a worksite closer to home in Maryland. *See* Mot. for Summ. J. at 9; Pl.'s Opp'n at 4; Reply at 2. The defendants admit that they denied her accommodation request when they informed the plaintiff that a transfer was not "immediately possible." [5]

---

**5.** The defendants maintain that, as a matter of law, they had no duty to provide the plaintiff with an accommodation to help her commute to and from work. *See* Mot. for Summ. J. at 10. The court need not decide this legal issue at this point because the company's own employment manuals, contemplate moving employees who are medically restricted. *See* Pl.'s Opp'n Ex. 8. In a section of a Bell Atlantic manual entitled "Placement of Medi- cally Restricted Employees," the manual says that "Medically restricted employees may be permanently reassigned to available jobs within their own or *in another department* which they are able and qualified to perform ....*" Id.* (emphasis added). A reasonable reading of this document implies that the company (particularly one like Bell Atlantic, which has more than one office in the region)

*See* Mot. for Summ. J. at 9; Pl.'s Opp'n at 4; Reply at 2.

■ Trying to demonstrate that the plaintiff has failed to satisfy a key element of her prima-facie case, the defendants argue that Ms. Walton has not pointed to any similarly situated white employees who were accommodated because of their disabilities. *See* Mot. for Summ. J. at 10. Drawing all justifiable inferences in the non-moving party's favor, however, the court concludes that Ms. Walton has met her burden by presenting enough evidence to establish the remaining element. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. First, the plaintiff, through her own deposition and the deposition testimony of several employees, has produced evidence indicating that at least one similarly situated white service representative named Mary Lou Wagner took disability leave for a period of time and was provided with a "light-duty" job upon her return. *See* Walton Dep. at 145–46; Clifton Dep. at 124. In addition, Ms. Walton has produced evidence to show that the defendants did not terminate Ms. Wagner because of her condition. *See id.* Further, the plaintiff presents evidence that Ms. Wagner was a member of a group of white employees known as "Charlie's Angels," which is why she received more favorable treatment.[6] *See* Pl.'s Opp'n at 5; Clifton Dep. at 117. Based on this evidence, the court rules that the plaintiff has successfully set forth her prima-facie case of discriminatory termination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

■ Next, the defendants submit that even assuming the plaintiff has made out her prima-facie case, she has not sufficiently refuted their legitimate, non-discriminatory reason for her termination, specifically, job abandonment. *See id.* Once the defendants carry their burden of providing a non-discriminatory justification for termination, the plaintiff must present enough evidence of discriminatory animus to allow a jury to infer discrimination. *See id.* In this case, the plaintiff has presented sufficient evidence to allow a jury to infer that the defendants fired her on the basis of her race. *See Aka*, 156 F.3d at 1289.

In addition to the strength of her prima-facie case, the deposition testimony provided by the plaintiff calls into question the defendants' non-discriminatory reason for termination. According to the defendants, Bell Atlantic fired Ms. Walton in 1996 for job abandonment. *See* Mot. for Summ. J. at 10. But for some reason, individuals who were not even supervising Ms. Walton during this time period signed letters that Ms. Walton received, including both the May 1, 1996 letter informing her that the company would fire her if she did not return to work by May 8, 1996, as well as her termination letter. *See* Quade Dep. at 28, 34; Clifton Dep. at 65–67. The court deems it odd that the two people who signed the plaintiff's termination letter, John Quade and Charles Clifton, had not supervised the plaintiff for more than one year and for more than two years respectively. *See* Quade Dep. at 31; Clifton Dep.

may reassign medically restricted employees to other worksites. While the court will not delve into the issue of whether the company can be bound by its own employment manual, the court notes that the plaintiff's principal point is that a similarly situated employee who was not a member of the protected class was given a job assignment that did accommodate her disability.

6. According to the deposition testimony of Mr. Charles Clifton, the phrase "Charlie's Angels" referred to a group of five white female employees who worked under his supervision at the garage located in Herndon, Virginia. *See* Clifton Dep. at 118.

at 65–67. Moreover, the fact that Charles Clifton signed the termination letter when he had not supervised the plaintiff for more than two years and when he is allegedly the supervisor of a group of white employees indisputably known as "Charlie's Angels" who allegedly received preferential treatment raises additional concerns. These unexplained actions of the defendants, combined with the strength of the plaintiff's prima-facie case and the evidence of the existence of a group of white workers known as "Charlie's Angels" who allegedly received preferential treatment, are sufficient for the court to deny the defendants' motion for summary judgment on Ms. Walton's discriminatory-termination claim.

### 2. Hostile Work Environment

The plaintiff alleges that the defendants created a hostile work environment on the basis of her race in violation of Title VII in the following ways: by instructing her not to file workers' compensation claims after being injured on the job; by failing to submit the proper documents to the health-benefits department; by assigning her to Great Falls, Virginia without a mentor; by a supervisor (Charles Clifton) posting bulletin board messages that were degrading to minorities; and by other employees directing statements of a racial and sexual nature at her. *See* Mot. for Summ. J. at 11 (citing Amended Compl. ¶ 172; Walton Decl. ¶¶ 5, 6, and 12). In addition, the plaintiff asserts that the fact that the defendants denied her promotions, threatened her repeatedly with termination, denied her a reasonable accommodation of transfer of work locations, and hired an investigator to follow her after the company fired her all contributed to a hostile work environment. *See* Pl.'s Opp'n at 6 (citing Meredith Dep. at 13–18, 45–47).

### a. Legal Standard for a Hostile Work Environment Under Title VII

■ Title VII prohibits an employer from creating or condoning a discriminatorily hostile or abusive work environment. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII makes it unlawful for an employer to "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's race, color, religion, sex, or nation of origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has made it clear that the language "terms, conditions, or privileges" contained in Section 2000e–2(a)(1) is not limited to economic or tangible discrimination and may include psychological harm. *See Meritor,* 477 U.S. at 64, 106 S.Ct. 2399. In addition, the Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (quotation omitted). On the other hand, conduct that does not create a hostile or abusive environment is beyond the purview of Title VII. *See id.* at 21, 114 S.Ct. 367.

■ To establish a claim of hostile work environment based on racial discrimination, a plaintiff must demonstrate "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996).

 A finding of a hostile work environment depends on the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris*, 510 U.S. at 23, 114 S.Ct. 367. Moreover, the harassment need not be racial in content to create a racially hostile work environment. *See Bowdre v. Richardson*, 131 F.Supp.2d 179, 187 (D.D.C.2001) (Urbina, J.). Rather, it must be shown that "had the plaintiff [not been part of the protected class,] she would not have been treated in the same manner." *Aman*, 85 F.3d at 1083. The Supreme Court circumscribed the definition of a hostile work environment so that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citations omitted).

#### b. The Plaintiff Has Failed to Establish a Hostile Work Environment

 In this case, the plaintiff has failed to present sufficient evidence of a hostile work environment to survive summary judgment. Even assuming that all of the plaintiff's claims are true, the court agrees with the defendants in that "the type of conduct that [Ms.] Walton complains of, i.e., rude comments, unjust criticism, and stressful working conditions, amount to 'ordinary tribulations of the workplace' that [is] insufficient as a matter of law for a hostile environment case." Mot. for Summ. J. at 12 (citing *Barbour v. Browner*, 181 F.3d 1342, 1348–49 (D.C.Cir.1999)). The plaintiff bases the majority of these allegations of a hostile work environment solely on her own allegations and provides the court with very little supporting evidence to strengthen her position. *See* Pl.'s

Opp'n at 5–6 (citing Walton Decl. ¶ 8). While in some cases these allegations alone might allow the plaintiff to overcome summary judgment, in this case, the lack of credible or corroborative evidence offered with respect to specific instances of special treatment for white employees, rude comments, unjust criticism, holiday overtime, denied benefits, or termination threats justifies a ruling for the defendant. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Therefore, the court grants summary judgment for the defendants on the plaintiff's hostile-work-environment claim.

#### 3. Discriminatory Denial of Training

 The plaintiff alleges that the defendants discriminated against her by denying her field training and on-the-job training while she was employed with Bell Atlantic–Virginia. *See* Mot. for Summ. J. at 16. The defendants submit that this claim fails because the plaintiff has not offered any evidence to support a prima-facie case. *See id.* In her answers to interrogatories and in her deposition testimony, the plaintiff makes numerous allegations regarding disparate treatment with respect to training. *See* Walton Dep. 118–123; Walton Ans. to Interrog. No. 1. The plaintiff, however, cannot show any instances of training that she sought and that the company denied that would substantiate her claims. *See* Mot for Summ. J. at 10. Ms. Walton also fails to establish the existence of any similarly situated white employees who were given training in lieu of her. *See id.* Absent any concrete examples or evidence to support her allegations, the court concludes that the plaintiff has failed to establish a prima-facie case of discrimination. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Accordingly, the court grants the defendants' motion for summary judgment on the claim of discriminatory denial of training.

#### 4. Discriminatory Failure to Promote

Lastly, the plaintiff alleges that the defendants discriminated against her in 1993 by denying her promotions to the positions of Central Office Technician, Engineering Assistant, and Communications Consultant. *See* Compl. at 173.

 In arguing for summary judgment on this claim, the defendants assert that the statute of limitations bars this claim.[7] *See* Def.'s Supplemental Brief at 4. It is well-settled law that with respect to a statute of limitations, the court should "select the most appropriate or analogous state statute." *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Since the plaintiff worked in Maryland during the time period in question, the court concludes that Maryland's three-year statute of limitations governs. *See* Def.'s Supplemental Brief at 4 (citing *Grattan v. Burnett*, 710 F.2d 160, 162 (4th Cir.1983)). Given that the original plaintiffs filed their complaint on September 19, 1996, the defendant argues that Ms. Walton's claims for failure to promote must have occurred between September 18, 1993 and November 27, 1993, when Ms. Walton accepted a job outside of Maryland. *See id.* Construing the facts in a light most favorable to the plaintiff, however, this court concludes that because Ms. Walton did not know about her passage of the required test until after she accepted the new position outside of Maryland, she could not have filed the claim before knowing that she was eligible for the position. Therefore, the three-year statute of limitations does not bar her claims.

 Moving to the merits, the court notes that to establish a claim for discriminatory failure to promote, the plaintiff must show that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) despite her qualifications, she was rejected; and (4) other employees not of the same protected class were promoted while she was not. *See Albritton v. Kantor*, 944 F.Supp. 966, 973 n. 13 (D.D.C. 1996) (Urbina, J.) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). As previously stated, there is no dispute that Ms. Walton is a member of a protected class since she is African–American. A dispute does exist, however, about Ms. Walton's qualifications for promotion. According to the defendants, on September 16, 1993, Ms. Walton did not pass the ESMC exam required for promotion to Central Office Technician. *See* Mot. for Summ. J. at 14–15. An employee familiar with the testing records of Ms Walton supports this contention in a declaration. *See* Kaiser Decl. ¶ 4. This assertion, however, is directly contradicted by the plaintiff through a copy of the letter received by Ms. Walton from Bell Atlantic in November 1993 stating that she did in fact receive a qualifying score on the ESMC examination that she took in September 1993. *See* Pl.'s Opp'n Ex. 1 Attach. B.

---

7. In supplemental briefing to the court on the statute-of-limitations question, the plaintiff argued that 28 U.S.C. § 1658 ought to apply to claims brought under the 1991 revisions to Title VII. *See* Pl.'s Supplemental Brief at 3. The court, however, declines to discuss the implications of Section 1658 because of the existence of the Maryland statute of limitations. Given that the plaintiff took the examination at issue in Maryland and was employed in Maryland at the time of the alleged

discriminatory acts, the court sees no reason to render an advisory opinion on section 1658's application to Title VII cases. *See Flast v. Cohen*, 392 U.S. 83, 96–97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (stating that Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues). Accordingly, the court concludes that Maryland's three-year statute of limitations applies to this claim.

The existence of a genuine issue of material fact prevents the court from granting the defendants' motion for summary judgment with respect to the discriminatory failure-to-promote claim. *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The court concludes that the plaintiff has established her prima-facie case on this claim, that the defendants have presented a legitimate, non-discriminatory reason for the plaintiff's failure to promote (i.e., that she did not pass the required test), but that the plaintiff has presented enough evidence of discrimination to allow a jury to infer discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Accordingly, the court denies the defendants' motion for summary judgment on the discriminatory failure-to-promote claim.

## IV. CONCLUSION

For all these reasons, the court denies the defendants' motion on the plaintiff's claims of discriminatory termination and discriminatory failure to promote. In addition, the court grants the defendants' motion for summary judgment on the hostile-work-environment claims and the discriminatory denial-of-training claim. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 27 day of February, 2002.

### *ORDER*

DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF DENISE WALTON

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 27 day of February, 2002, it is hereby

**ORDERED** that the defendants' motion for summary judgment on the claims of discriminatory termination and discrimina-

tory failure to promote is **DENIED**; and it is

**FURTHER ORDERED** that the defendants' motion for summary judgment on the hostile-work-environment and discriminatory denial-of-training claims is **GRANTED**.

**SO ORDERED.**