**Pamela BARRY, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 98–2332 (JR).**

United States District Court, District of Columbia.

Aug. 11, 1999.

Dara A. Corrigan, Assistant U.S. Attorney, Judiciary Center, Washington, DC, for defendant.

## MEMORANDUM OPINION

ROBERTSON, District Judge.

In this case brought under the Privacy Act, 5 U.S.C. § 552a, plaintiff, a former manager at the Immigration and Naturalization Service, alleges that the Office of the Inspector General for the Department of Justice (OIG–DOJ) unlawfully released on the Internet a report critical of her work. DOJ moves for summary judgment, on the ground that OIG–DOJ did not "disclose" the report but posted it on the Internet only after others fully released it to the media (twice) and discussed its contents in a public Congressional hearing. Because there is no genuine issue as to the timing or manner of the report's release, and because the Privacy Act does not apply to information that has already been fully disclosed to the public, defendant's motion will be granted.

### FACTS [1]

On June 10, 1995, members of the Congressional Task Force on Immigration Reform made a fact-finding visit to the INS' Krome Detention facility and the Miami International Airport. After their visit, nearly fifty INS employees submitted a complaint to Congress alleging that their managers had intentionally misled the visiting delegation. In July 1995, OIG–DOJ began an investigation to determine whether INS officials, including plaintiff Pamela Barry, the Executive Director for the Office of Congressional Relations, had created a false picture of working conditions during the delegation's visit.

On June 14, 1996, OIG–DOJ completed a 197–page report, titled "Alleged Deception of Congress: The Congressional Task

Gary C. Adler, O'Connor & Hannan, L.L.P., Washington, DC, Paul Knight, Law Offices of Paul Knight, Washington, DC, for plaintiff.

1. Plaintiff has not identified any material facts as to which she contends there is a genuine dispute. The Court accordingly assumes that the facts identified by the moving party in its statement of material facts are admitted. Local Rule 108(h).

Force on Immigration Reform's Fact–Finding Visit to the Miami District of INS in June 1995" ("Report"). The OIG found that INS officials had transferred or released more than 100 illegal immigrants out of the detention facility in Miami so that the Congressional task force would not see the overcrowding there. The Report concluded that some INS employees, including the plaintiff, had intentionally misled the Congressional task force and should be disciplined.

The Subcommittee on Immigration and Claims of the Judiciary Committee of the U.S. House of Representatives officially requested the Report as soon as it was published on June 20, 1996. The OIG delivered the Report to the Subcommittee but asked the staff not to disclose the Report outside the Subcommittee because of the privacy interests of persons criticized in the Report. Nevertheless, on June 28, 1996, the DOJ's Office of Public Affairs informed OIG–DOJ that a member of the Subcommittee had disclosed the entire Report to several media organizations. On June 29, 1996, the Los Angeles Times printed an article describing the Report and its findings, with a particular emphasis on the plaintiff. On July 8, 1996, the San Diego Union–Tribune printed an article which quoted some of the Report's specific criticisms of the plaintiff. OIG–DOJ continued over the next two months to provide copies only in response to official inquiries from members of Congress or other DOJ divisions, notwithstanding the fact that the Report was by then very much public. All recipients were informed of the privacy interests of the people named in the Report and were asked to limit access and distribution accordingly.

In September 1996, the Subcommittee requested that Inspector General Michael Bromwich appear and testify about the Report at a hearing on September 12. In anticipation of the hearing, which was to be public, Subcommittee Chairman Lamar Smith issued a press release on September 10 announcing that he had publicly re-leased the full Report earlier that day. At the public hearing two days later, plaintiff was singled out for criticism of her official conduct. OIG–DOJ then officially released the Report to the public on September 13, 1996. The Report was posted on OIG's Internet website on May 19, 1997.

Plaintiff filed this action on September 19, 1998. Her claim is that the OIG–DOJ intentionally and wilfully posted the Report on the Internet in violation of the Privacy Act, 5 U.S.C. § 552a, and she demands one million dollars in damages.

*ANALYSIS*

■ A person seeking damages under the Privacy Act for an alleged improper disclosure must prove that: (1) the agency "disclosed" information; (2) the information "disclosed" is a "record" contained within a "system of records"; (3) an adverse impact resulted from the disclosure; and (4) the agency's disclosure was willful or intentional. *Fisher v. National Institutes of Health,* 934 F.Supp. 464, 468 (D.D.C.1996), *aff'd* 107 F.3d 922 (D.C.Cir. 1996); *see* 5 U.S.C. § 552a(g)(4). The defense motion submits that plaintiff's case falters at the first element, because OIG–DOJ did not "disclose" information.

■ The obvious question raised by this motion is whether an agency "discloses" information by posting it on the Internet when it is already public. Plaintiff, insists, however that the answer to the question is not so obvious. Not, that is, if the information is "disclosed" on the Internet to a person or persons who encounters it there *for the first time.*

Plaintiff's argument is that "a prior release is only effective as to a recipient who has previously been provided the information" (Pl.Opp. at 13). The argument depends on, and proceeds from, *Pilon v. Department of Justice,* 73 F.3d 1111 (D.C.Cir.1996), even though *Pilon* disclaimed application of its rule to facts like those in this case, *see* 73 F.3d at 1123 n. 10 ("[t]his case does not present the question

of whether an agency may, consistent with the Privacy Act's disclosure provisions, release a document that has already been fully aired in the public domain through the press or some other means").[2] And, indeed, this case is nothing like *Pilon.* In *Pilon,* an agency employee faxed a confidential memorandum to a former agency employee, who was already familiar with the document from his time at the agency, and the former agency employee passed on the memorandum to a reporter. The handoff to the former agency employee was held to be a "disclosure" prohibited by the Privacy Act, even though the former employee already knew the facts. But the fact that a former employee knew the facts did not make the facts *public.* The memorandum in *Pilon* had not been released to the media by Congress. It had not been the subject of public Congressional hearings. The *Pilon* decision, even if it were applicable to this case, is easily distinguished from this one.

Also distinguishable are decisions involving information that may have been "public," but that could be found only in isolated public records. *Cf. United States Department of Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 500, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (agency cannot release home addresses of non-union members to union); *Quinn v. Stone,* 978 F.2d 126, 133–34 (3d Cir.1992) (agency cannot release out-of-date phone number and address listed on hunting roster to hunting security officers). There was nothing isolated or obscure about the OIG Report in this case.

There was no "disclosure" here because plaintiff had no protectable privacy interest in the Report at the time of its posting on the Internet. In the absence of a "dis-

closure," plaintiff has no claim under the Privacy Act. Defendant's motion for summary judgment must, and will, be granted.

An appropriate order accompanies this memorandum.

### *ORDER*

Upon a review of the record and for the reasons stated in an accompanying memorandum.

**ORDERED** that defendant's motion for summary judgment [# 8] is **granted.**

---

2. The Court goes on to say, "We do note, however, that the Privacy Act approves those disclosures that are 'required' under the Freedom of Information Act ('FOIA'), *see* 5 U.S.C. § 552a(b)(2), and that under various FOIA exemptions, prior publication is a factor to be considered in determining whether a document properly is to be released." Here, be-

cause defendant did not post the report in response to a FOIA request (although it received many such requests, see Briscoe Decl. ¶ 3), defendant may not raise the defense that the report was "required" to be released under FOIA. *Bartel v. Federal Aviation Administration,* 725 F.2d 1403, 1411–13 (D.C.Cir. 1984).