Kathie SULLIVAN–OBST, Plaintiff,

v.

Colin L. POWELL, Secretary, Department of State, Defendant.

Civil Action No. 00–0668 (RMU).

United States District Court, District of Columbia.

Jan. 29, 2004.

Kathie SULLIVAN, Burke, VA, Pro se.

Mindy Gae Farber, R. Douglas Taylor, Jr., Farber Taylor, LLC, Rockville, MD, for Plaintiff.

Charlene Denise Bey–Proctor, Claire M. Whitaker, Michael A. Krasnow, Roscoe Howard, Jr., U.S. Attorney's Office Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING THE DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case comes before the court on the defendant's motion to dismiss and for summary judgment. The plaintiff alleges racial and sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.;* age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.;* and retaliation in violation of Title VII and of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* The plaintiff also alleges a violation of the Privacy Act, 5 U.S.C. § 552a. Because the plaintiff has not made out a prima facie case for a hostile work environment based on race or sex, for retaliation under either Title VII or the ADEA, or for a violation of the Privacy Act, the court grants the defendant's motion for summary judgment on those counts. The court further concludes that the plaintiff can prove no set of facts which would entitle her to relief un-

der the FMLA. Accordingly, the court grants the defendant's motion to dismiss on that count.

## II. BACKGROUND

### A. Factual Background

The Department of State ("State Department") employed the plaintiff, a 53 year old Caucasian female, as a secretary from January 1991 until April 28, 2000. Am. Compl. ("Compl.") ¶ 4. The plaintiff alleges that throughout her tenure working in various offices within the State Department, her supervisors subjected her to a litany of abusive behavior motivated by a discriminatory and retaliatory animus. *See generally id.* Specifically, the plaintiff alleges discrimination on the basis of race, sex, and age, and that her supervisors retaliated against her for engaging in Equal Employment Opportunity ("EEO") activity and exercising her rights under the FMLA. *Id.* ¶¶ 71–99. The plaintiff also contends that a supervisor violated her rights under the Privacy Act. *Id.* ¶¶ 100–103.

The plaintiff filed EEO complaints regarding the alleged discrimination on June 5, 1995, August 18, 1997, and January 7, 2000. *Id.* ¶¶ 7–9; Def.'s Mot. at 9–10, 13. After various supervisors warned her about her deficient work performance, and conducted an investigation into sexual harassment charges filed against her, the defendant terminated the plaintiff, citing misconduct and leave abuses. Compl. ¶ 69; Def.'s Mot. Ex. F.

### B. Procedural History

On March 27, 2000, the plaintiff, proceeding *pro se*, filed a complaint alleging discrimination, retaliation, the creation of a hostile work environment, and violation of the FMLA. On July 6, 2001, the plaintiff initiated a second *pro se* case by filing a complaint containing many of the same

claims alleged in the first complaint, but also setting forth new facts and claims regarding alleged violations of the FMLA, the Privacy Act and the creation of a hostile work environment.

On January 4, 2002, the court consolidated the two cases. On February 11, 2003, the plaintiff retained counsel to represent her in the now-consolidated litigation. On March 6, 2003, the defendant filed a motion to dismiss and for summary judgment. In a July 2, 2003 order, however, the court struck the complaints along with the motion to dismiss, explaining that "[t]he parties' submissions would prevent the court from rendering a fair ruling because they do not crystallize the relevant issues and they are disorganized." Order dated July 2, 2003. Accordingly, the court ordered the parties to re-file the complaint and dispositive motion. *Id.* On July 23, 2003, the plaintiff submitted a seven-count amended complaint alleging (1) retaliation in violation of Title VII; (2) age discrimination in violation of the ADEA; (3) discharge in violation of the FMLA; (4) retaliation in violation of the FMLA; (5) sex discrimination in violation of Title VII; (6) race discrimination in violation of Title VII; and (7) violation of the Privacy Act. Compl. ¶¶ 71–103. On October 6, 2003, the defendant filed a new motion to dismiss and for summary judgment. The court now turns to that motion.

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal

citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C.Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C.Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F.Supp. 14, 18 (D.D.C.1993).

## B. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C.Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47–48, 78 S.Ct. 99 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show be-yond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C.Cir.2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Development v. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39–40; *Browning*, 292 F.3d at 242.

## C. The Court Grants the Defendant's Motion for Summary Judgment on the Title VII Retaliation Claims

### 1. Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C.Cir.2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" ... Third, should the defendant carry this burden, the plaintiff must then have an

opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

■ To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse personnel action, and (3) there existed a causal connection between the two. *Morgan,* 328 F.3d at 651. The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small,* 271 F.3d 285, 299 (D.C.Cir.2001).

■ With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEO complaints. *Forkkio v. Powell,* 306 F.3d 1127, 1131–32 (D.C.Cir. 2002). As for the second prong, "to establish an adverse personnel action in the absence of diminution of pay or benefits, [the] plaintiff must show an action with materially adverse consequences affecting the terms, conditions, or privileges of employment." *Stewart v. Evans,* 275 F.3d 1126, 1134 (D.C.Cir.2002) (quoting *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir. 1999)). Minor changes in work-related duties or opportunities do not qualify as actionable injuries unless accompanied by adverse changes in the terms, conditions, or privileges of employment. *Id.* at 1135. Finally, under the third prong, the plaintiff

may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Cones v. Shalala,* 199 F.3d 512, 521 (D.C.Cir.2000) (quoting *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985)). To establish a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20–month period suggests "no causality at all").

■ If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*" *Lathram v. Snow,* 336 F.3d 1085, 1088 (D.C.Cir.2003) (internal citations omitted).

At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1290 (D.C.Cir.1998)) (en banc). In deciding this, the court considers whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia,* 298 F.3d 989, 992–93 (D.C.Cir. 2002) (quoting *Aka,* 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka,* 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

## 2. The Plaintiff Fails to Show that her Termination was Motivated by Retaliatory Animus

In the amended complaint, the plaintiff states that "[t]he acts and/or omissions of the agency in retaliating against Ms. Sulli-van after and because she engaged in protected EEO activity in 1994, 1997 and 1999 constitute willful, intentional and unlawful discrimination against Ms. Sullivan based on retaliation[.]" For most of her allegations, the plaintiff fails to link specific instances of engaging in protected activity with specific adverse personnel actions. Rather, the plaintiff states generally that from the time she first initiated contact with the EEO Office, the plaintiff's supervisors "took a series of adverse personnel actions against her."[1] Pl.'s Opp'n at 17.

The bulk of these allegations do not rise to the level of "adverse personnel actions" as defined by this circuit. For instance, the plaintiff makes several claims that supervisors downgraded her yearly performance appraisals and reprimanded her on many occasions. *E.g.* Compl. ¶¶ 21, 31, 52, 59. The plaintiff has not connected any of these actions to a reduction in pay or benefits, or any other effects on the terms or conditions of her employment. *Stewart,* 275 F.3d at 1134; *see also Brodetski v. Duffey,* 141 F.Supp.2d 35, 47 (D.D.C. 2001) (holding that "[f]ormal criticism and poor performance evaluations do not ordinarily constitute 'adverse actions' "). In short, the plaintiff's vague accusations of supervisors reprimanding her, conspiring

---

1. These actions include, *inter alia,* keeping unofficial personnel records on her, refusing to accommodate her request for delayed entry in the Management Analyst Pilot program, visiting her cubicle excessively, making "false and misleading accusations against her about the agency's non-expendable custodial property," reprimanding her for not unlocking a file cabinet, requiring her to work on three different assignments under seven different supervisors, refusing her any opportunity for business travel, downgrading her yearly performance appraisal, singling her out for reprimand, marking her as absent without leave, placing her on leave restriction, transferring her to a "dead-end" post, grabbing her arm, stopping an office collection for funeral flowers after her father passed away, sending her hostile e-mails, embarrassing her in front of co-workers, discussing her private medical information in front of co-workers, and circulating an e-mail implying that she was a security risk. Compl. ¶¶ 15–70. In other submissions, the plaintiff makes further allegations of adverse actions, such as being "[the] recipient of daily harassment, hostility, hate and harassment," "the target of management's plan to have her co-workers watch and record her activities and report them back to management," "admonished daily by her supervisors, without justification," "subjected to adverse interpretations of her work and movement in the office," "constantly yelled at," and "provoked into loud and hostile discussions." *See generally* Pl.'s Opp'n.

against her, and denigrating her performance do not rise to the level of an actionable claim. *Stewart*, 275 F.3d at 1134–36.

■ The plaintiff does, however, point to two discrete instances of failure to promote her. First, she claims that on September 13, 1995, two of her supervisors exchanged e-mail communications in which they conspired to prevent the plaintiff form obtaining any promotions. Compl. ¶ 33. Where the alleged retaliation takes the form of a failure to promote, the plaintiff must show two additional facts to state a prima facie claim which are (1) that she applied for an available job and (2) that she was qualified for the position. *Singletary v. District of Columbia*, 351 F.3d 519, 524 n. 5 (D.C.Cir.2003).

■ The plaintiff does not come close to making a prima facie showing of retaliation surrounding the September 13, 1995 e-mails. Although the plaintiff does not specify the protected activity for which the e-mail "conspiracy" was in retaliation, the court assumes that the plaintiff is alleging retaliation for her June 5, 1995 EEO complaint. The text of the e-mail exchange, however, does not reveal any retaliatory motive. Compl. ¶ 33. In addition, the more than three month gap between the June 5, 1995 EEO complaint and the September 13, 1995 e-mails is insufficient to show causation. *Breeden*, 532 U.S. at 273, 121 S.Ct. 1508. Moreover, even if the court were to conclude that the two events were causally connected, the plaintiff does not go on to provide any indication that she applied for a specific available job or that she was qualified for the position. *Singletary*, 351 F.3d at 524 n. 5.

The plaintiff's second allegation of a failure to promote suffers from the same flaws as the first. The plaintiff claims that in October of 1996, a supervisor declined her request for a desk audit that was necessary for her to gain a promotion. Compl. ¶ 40. Again, the closest statutorily protected activity that could form the basis of retaliation was the plaintiff's June 5, 1995 EEO complaint, and again, the over 15–month gap between the protected activity and the purported retaliatory action fails to establish the necessary causal link. *Breeden*, 532 U.S. at 273, 121 S.Ct. 1508. Because the plaintiff has not shown a prima facie case of retaliation on either of her failure to promote claims, the court grants summary judgment to the defendant on those claims. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

■ The final specific adverse action that the plaintiff has linked to her participation in statutorily protected activity is her termination on April 28, 2000. Compl. ¶ 72. Initially, the defendant argues that the plaintiff has not exhausted her administrative remedies for contesting the termination because she has not sought EEO counseling for the termination and has not appealed it to the Merit Systems Protection Board. Def.'s Mot. at 27. Although the plaintiff does not dispute this fact, exhaustion of administrative remedies is not a prerequisite when a plaintiff asserts a Title VII claim of retaliation for filing a previous EEO complaint. *Lofton v. Atwood*, 172 F.3d 920, 1998 WL 700155 (D.C.Cir.1998) (unpublished decision) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992)). The rationale for this exception is a practical one. As the Seventh Circuit explains,

> [H]aving been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation.... [W]e [therefore] join the other circuits that have spoken to the question in adopting the rule that a separate

administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

*Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989). Accordingly, the court determines that the plaintiff may raise her retaliation claim in this action despite the fact that she has not administratively exhausted that claim.

▮ The plaintiff alleges that the termination was the culmination of a series of retaliatory actions that her supervisors engaged in since she filed her first EEO complaint. Pl.'s Opp'n at 17. The plaintiff filed her final EEO complaint on January 7, 2000, and filed suit in this court on March 27, 2000. Compl. ¶¶ 55, 11, The termination took place on April 28, 2000. Compl. ¶ 69. The court concludes that the one-month time period between the plaintiff's filing of her suit in this court and the State Department's decision to terminate her is short enough to establish a prima facie case of retaliation. *Cones,* 199 F.3d at 521.

Because the plaintiff has advanced a prima facie case of retaliation, the burden now shifts to the employer to articulate a legitimate, non-discriminatory reason for terminating the plaintiff. *Morgan,* 328 F.3d at 651. The defendant carries this burden with ease. In response to the plaintiff's claims, the defendant produces a wide array of evidence that demonstrates the plaintiff's sexual harassment of a co-worker, insubordination and incompetence. *See e.g.,* Def.'s Exs. B (detailing the plaintiff's non-compliance with proper leave procedures), C (detailing the plaintiff's excessive absenteeism), D (detailing insubordination and failure to comply with proper leave procedures), E (evidencing disciplinary action taken against the plaintiff), F (detailing the plaintiff's sexual harassment of another employee, insubordination, failure to properly follow leave procedures

and absence without leave), & F1–F24 (detailing the plaintiff's sexual harassment of another employee).

▮ Because the defendant has successfully rebutted the plaintiff's prima facie case, the *McDonnell Douglas* framework disappears. *Morgan,* 328 F.3d at 651. Now, to survive summary judgment, the plaintiff must "show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Lathram,* 336 F.3d at 1088. To do so, the plaintiff must show that "the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination." *Aka,* 156 F.3d at 1289. The plaintiff has not produced any evidence to attack the employer's proffered explanation and has not submitted any further evidence of retaliation apart from the conclusory allegations that comprise her prima facie case. The court is not required to, and does not, accept the plaintiff's conclusory allegations of retaliation as true. *Greene,* 164 F.3d at 675. Accordingly, the plaintiff is left only with the temporal proximity between her filing of a complaint and the termination to prove her case for retaliation. While the temporal proximity between the complaint and the termination was sufficient to establish a prima facie case, the court concludes that on these facts, temporal proximity alone is insufficient to prove causation, especially considering the lack of corroborative evidence. *Nelson v. J.C. Penney Co.,* 75 F.3d 343, 346–47 (8th Cir. 1996) (holding that a plaintiff fired one month after filing a discrimination charge failed to establish causation absent independent evidence in addition to temporal proximity). Thus, the court determines

that no reasonable jury could conclude that the adverse employment decision was made for a discriminatory reason. *Lathram*, 336 F.3d at 1088. Rather, it is clear that non-discriminatory reasons justified the plaintiff's termination.

## D. The Court Grants the Defendant' Motion for Summary Judgment on the Race and Sex–Based Hostile Environment Claims

In her hostile environment allegations, the plaintiff essentially claims that the sum of all her supervisors' actions equals a hostile environment. Pl.'s Opp'n at 13. The fatal flaw, however, is that none of the plaintiff's myriad allegations gives rise to an inference of discrimination based on race or sex.

### 1. Legal Standard for Hostile Environment

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary*, 351 F.3d at 526. (quoting *Meritor*, 477 U.S. at 65, 67, 106 S.Ct. 2399). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environ-

ment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. 367. Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *Id.* at 23, 114 S.Ct. 367; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F.Supp.2d. 52, 63 (D.D.C.2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir.2002)).

### 2. The Plaintiff has failed to Demonstrate a Hostile Environment based on Race

To establish a claim of a racially hostile work environment, a plaintiff must demonstrate "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability." *Richard v. Bell Atl. Corp.*, 209 F.Supp.2d 23, 34 (D.D.C. 2002) (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)). In only two paragraphs of the

amended complaint does the plaintiff provide specific instances of occasions where she was allegedly treated differently than a person of a different race. Compl. ¶¶ 24, 40. First, the plaintiff alleges that the defendant granted an African–American secretary's request to be moved to the end of a training program, three months after the plaintiff's identical request was not granted. *Id.* Second, the plaintiff claims that in October of 1996, her supervisor denied her an opportunity for promotion, even though she was performing the same tasks as two higher ranked African–American colleagues. Compl. ¶ 40.

These two allegations fail to demonstrate that the plaintiff suffered intentional discrimination because of race. The evidence regarding these two incidents consists solely of her own allegations. In this case, the lack of credible or corroborative evidence offered with respect to the claims of special treatment for African–American employees justifies a ruling for the defendant. *Greene,* 164 F.3d at 675; *Richard,* 209 F.Supp.2d at 35. Even assuming *arguendo* that racial animus motivated both of these incidents, two minor incidents that occurred over the course of a nine-year period of employment do not demonstrate that the alleged discrimination was pervasive or regular. *Richard,* 209 F.Supp.2d at 34–35 (explaining that "[a] finding of a hostile work environment depends on the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance"). Consequently, the plaintiff has failed to establish a prima facie claim for a hostile environment based on race, and the court grants summary judgment to the defendant on this count. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Richard,* 209 F.Supp.2d at 34.

### 3. The Plaintiff Has Failed to Demonstrate a Hostile Environment Based on Sex

▆▆ The plaintiff also claims that the defendant maintained a hostile environment due to sex discrimination. Compl. ¶¶ 90–95. In order to establish a sexually hostile environment, a plaintiff must show that:

(1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment[;] (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment[;] and (5) the existence of *respondeat superior* liability.

*Davis v. Coastal Int'l Sec., Inc.,* 275 F.3d 1119, 1122 (D.C.Cir.2002) (quoting *Yeary v. Goodwill Industries–Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997)).

▆▆ Much like the plaintiff's allegations regarding racial discrimination, here the plaintiff simply produces no credible evidence that the actions of her supervisors were due to her sex, or that she was ever subjected to any kind of sexual harassment. While the plaintiff does mention one instance where a supervisor transferred duties relating to non-expendable custodial property to a man, she provides no elaboration on how this action compromised sexual harassment. Compl. ¶ 34. In short, apart from her own conclusory allegations, the plaintiff produces no evidence whatsoever that her supervisors based their actions on gender animus. *Greene,* 164 F.3d at 675; *Richard,* 209 F.Supp.2d at 35. In fact, at the same time the plaintiff's supervisor transferred some of her duties to a man, the plaintiff's supervisor transferred some of her other duties to a woman, making a claim of

discrimination based on her sex highly dubious. Compl. ¶ 34. In sum, the court concludes that the plaintiff has not proven a prima facie case of a hostile environment based upon sex discrimination. *Davis,* 275 F.3d at 1122.

### E. Court Grants the Defendant's Motion for Summary Judgment on the ADEA Claim

In cases alleging violations of the ADEA, this circuit applies the *McDonnell Douglas* burden shifting test. *Forman,* 271 F.3d at 292. It is not clear from the plaintiff's amended complaint whether the plaintiff seeks relief under the ADEA for a particular adverse action or for a hostile work environment. The plaintiff claims generally that she was discriminated against due to her age and provides a single incident where "duties related to office supplies" were transferred to a younger female employee. Compl. ¶ 34. Regardless of the theory under which the plaintiff is attempting to proceed, to establish a prima facie case of age discrimination, "[a]t bottom, a plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Teneyck v. Omni Shoreham Hotel,* 254 F.Supp.2d 17, 21 (D.D.C.2003) (internal citation omitted). The court holds that a one-sentence description of a single instance where duties were transferred to a younger employee, without any further explanation, does not establish a prima facie case of age discrimination. *Id.* Similarly, the court gives no credence to the plaintiff's general and unsupported allegations that she was subjected to age discrimination. *Greene,* 164 F.3d at 675. Accordingly, the court grants the defendant's motion for summary judgment on the ADEA claim. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### F. The Court Grants the Defendant's Motion for Summary Judgment on the Privacy Act Claim

The Privacy Act is intended to protect the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records. *Henke v. United States Dep't of Commerce,* 83 F.3d 1453, 1456 (D.C.Cir.1996). In order to give life to these protections, the Act provides for a cause of action for damages if the plaintiff can prove that (1) the agency disclosed information; (2) the information disclosed is a record contained within a system of records; (3) and adverse impact resulted from the disclosure; and (4) the agency's disclosure was wilful or intentional. *Barry v. United States Dep't of Justice,* 63 F.Supp.2d 25, 27 (D.D.C.1999).

The plaintiff alleges that on July 1, 1999, one of her supervisors ordered her to cancel all of her pending doctor's appointments, medical tests and surgeries. Compl. ¶ 60 The plaintiff further claims that on September 24, 1999, one month after she underwent surgery, another supervisor sent her a letter placing her on administrative leave. *Id.* ¶ 65. It is unclear how these allegations support a violation of the Privacy Act. Because one supervisor told her to cancel all pending medical appointments, the plaintiff urges the court to believe that the supervisor must have culled this "record" from a "system of records." While the plaintiff is entitled to all justifiable inferences, this inference is too great a leap for the court to take. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. As has been the case with her other claims, the plaintiff provides no corroborating or supporting evidence despite the fact that she cannot rely solely on conclusory statements to survive summary judg-

ment. *Greene,* 164 F.3d at 675. The court therefore grants the defendant's motion for summary judgment on the Privacy Act claim. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### G. The Plaintiff Fails to State a Claim under the FMLA

 The FMLA grants private and federal employees periods of leave for certain family or health related events. Title I of the FMLA governs private sector and federal employees with less than 12 months of service. 29 U.S.C. §§ 2601 *et seq.* Title II of the FMLA governs actions relating to federal employees with more than 12 months of service. 5 U.S.C. §§ 6381 *et seq.* While both titles guarantee the same substantive rights, Title I expressly creates a private right of action to redress violations, whereas Title II does not. *Gardner v. United States,* 1999 WL 164412, at *7 (D.D.C. Jan.29, 1999); *accord Russell v. United State Dep't of the Army,* 191 F.3d 1016, 1018–19 (9th Cir.1999); *Mann v. Haigh,* 120 F.3d 34, 37 (4th Cir. 1997). It is undisputed that the State Department employed the plaintiff for more than 12 months. Compl. ¶ 4.; Def.'s Mot. at 3–6. As a result, Title I of the FMLA does not afford the plaintiff an avenue to assert her claim, given that she does not qualify as a federal employee with less than 12 months of service. 29 U.S.C. §§ 2601 *et seq.* Accordingly, the court grants the defendant's motion to dismiss because the plaintiff cannot prove any set of facts which would entitle her to relief under the FMLA. *Kingman Park,* 348 F.3d at 1040.

### IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss and for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of January 2004.