Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 13, 2003          Decided January 2, 2004

No. 02-7120

MORRIS J. WARREN,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(01cv00349)

*Susan S. Friedman*, Student Counsel, argued the cause for appellant. With her on the briefs were *Steven H. Goldblatt*, Director of the Appellate Litigation Program, appointed by the court, and *Cary Berkeley Kaye*, Supervising Attorney.

*Morris J. Warren*, *pro se*, was on the briefs for appellant.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Mary L. Wilson*, Assistant Corporation Counsel, argued the cause for appellee. With her on the brief was *Edward E. Schwab*, Acting Deputy Corporation Counsel.

Before: RANDOLPH and ROBERTS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: Morris Warren, representing himself, sued the District of Columbia under 42 U.S.C. § 1983 for constitutional violations he claims to have suffered while incarcerated in a private prison in Youngstown, Ohio. The Corrections Corporation of America operated the prison pursuant to a contract with the District. The issue is whether the district court erred in dismissing the complaint for failure to state a claim of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

On request, the clerk of the district court provides prisoners with a packet containing information on how to file a civil rights complaint, as well as a complaint form. Warren obtained a packet, completed the form in handwriting, and filed it in the district court. The court dismissed his complaint, but then granted him leave to amend, which Warren did using another form. Under the headings "Statement of Claim" and "Relief," Warren complained about the Youngstown facility and what happened to him there and alleged that the District of Columbia "knew or should have known" that he had been mistreated. Warren's five-page response to the District's motion to dismiss provided more detail.

It is often stated that *pro se* prisoner complaints should be "liberally construed." *E.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972). But that does not distinguish such complaints from any others. The general rule, applicable in all cases, is "that the complaint will be construed liberally on a Rule 12(b)(6) motion." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1987). In *pro se* prisoner cases, courts frequently add—after noting the "liberal construction"

rule—that the complaint should not be dismissed under Rule 12(b)(6) unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle,* 429 U.S. at 106 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). But again this is not unique for prisoner cases. It is the "accepted rule" in every type of case. *Conley,* 355 U.S. at 45–46. Perhaps courts are more forgiving in *pro se* prisoner cases because the complaints are often handwritten; they may not follow formal pleading conventions; and they may not draw fine lines between the legally relevant and the legally irrelevant. For example, in one such case, we derived the prisoner's cause of action not only from his formal complaint but also from other papers he had filed. *See Anyanwukatu v. Moore,* 151 F.3d 1053, 1058 (D.C. Cir. 1998).

Viewing Warren's complaint and his response to the District's motion to dismiss together, as did the district court, we discern the following allegations: prison officials used common needles to draw blood from Warren and members of his "pod," deprived him of medication for a month, locked him down "for no apparent reason," forced him to "lay [sic] on the cold floor naked between 15 to 20 hours everyday [sic]," denied him "cell running water or toilet water [for] over 72 hours, weeks at a time," sprayed tear gas "everyday [sic] in the cells and pods," and destroyed his property. Warren alleges that, as a result of this mistreatment, he caught pneumonia, suffered a mild stroke, and became infected by "yellow jaundice" (from the needle).

Warren claims the District "knew or should have known" about his mistreatment yet did not act to stop it. He describes several ways in which the District learned or should have learned about his situation: his own complaints to the mayor and to Department of Corrections Director Odie Washington, his wife's telephone calls, newspaper articles describing the mistreatment of prisoners at Youngstown, and the activities of a contract monitor appointed pursuant to the settlement of a class action brought by the Youngstown prisoners against the District and the Corrections Corporation.

Under *Monell*, municipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom. 436 U.S. at 694. *Respondeat superior* does not apply. *Id.* In order to state a claim against a municipality, the plaintiff therefore must allege not only a violation of his rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation. *See Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992); *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

The District argues that the district court properly dismissed the complaint because Warren failed to allege any constitutional violations. The District never mentioned this argument in the district court but thinks *Dandridge v. Williams*, 397 U.S. 471, 476 n.6 (1970), allows a prevailing party to defend the judgment on any ground. The law is otherwise. The Supreme Court has entrusted to the discretion of the courts of appeals the "matter of what questions may be taken up and resolved for the first time on appeal." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). In this court, the general rule is that a prevailing party may defend the judgment on any ground decided or raised below. *See Rogers v. District of Columbia*, 194 F.3d 174 (D.C. Cir. 1999); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084–85 (D.C. Cir. 1984). That too is the general rule in the Supreme Court. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 38–39 (1989). While we have discretion to consider issues not presented to the district court, *Roosevelt v. E.I. DuPont de Nemours & Co.*, 958 F.2d 416, 419 n.5 (D.C. Cir. 1992), the District has offered us no good reason for departing from our general rule. If on remand the District continues to believe that Warren has not alleged constitutional violations, it may file an appropriate motion. Nothing we say in this opinion resolves the issues the District wishes to raise here for the first time.

This brings us to the question whether Warren sufficiently alleged that a District custom or policy caused the claimed violations of his constitutional rights. Causation would exist if, for instance, the municipality or one of its policymakers

explicitly adopted the policy that was "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694; *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–30 (1988). Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom. *Praprotnik*, 485 U.S. at 130. Or the municipality may not have responded "to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306 (citing *Canton v. Harris*, 489 U.S. 378, 390 (1989), and *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000)).

Appointed counsel emphasizes the "deliberate indifference" theory of municipal liability. "Deliberate indifference," we wrote in *Baker*, 326 F.3d at 1306, "is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations," but did not act. Although this is an objective standard, it involves more than mere negligence. It does *not* require the city to take reasonable care to discover and prevent constitutional violations. It simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction. *See Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (describing the holding in *Canton*).

Here Warren has alleged that the District "knew or should have known" about the ongoing constitutional violations, but did nothing. If Warren can prove the violations, and prove as well that the District had actual or constructive knowledge of them, he will have established the District's liability. On a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must assume the truth of all well-pleaded allegations. It follows that Warren has stated a cause of action and that his complaint should not have been dismissed.

The District objects that Warren failed to plead "facts" establishing knowledge by the District. The district court said much the same: Warren's "proffered evidence was not sufficient to impute knowledge[.]" *Warren v. District of Columbia*, Civ. No. 01–0349 (HHK), mem. op. at 4 n.4 (D.D.C.

Aug. 1, 2001). But at this stage of the litigation, Warren needed only to supply "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a), which he has done. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). It is of no moment that Warren's allegation of actual or constructive knowledge on the part of the District was conclusory. Many well-pleaded complaints are conclusory. *See generally* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1218 (2d ed. 1990). And while we do not have to accept conclusions of law as true, conclusions of fact are another matter. For example, in *Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997), we found that whistleblowers' bare allegation that they "disclosed a possible violation of law" was "a statement of material fact that must be accepted as true for a Rule 12(b)(6) motion." *Id.* at 762. *See also Krieger v. Fadley*, 211 F.3d 134, 136 (D.C. Cir. 2000); *Maljack Productions, Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 376 (D.C. Cir. 1995). On the other hand, in *Tulare County v. Bush*, 306 F.3d 1138 (D.C. Cir. 2002), we refused to accept as true plaintiffs' allegation that the President's creation of a national monument violated the Antiquities Act, a legal conclusion with which we disagreed. *See also Mountain States Legal Found. v. Bush*, 306 F.3d 1132 (D.C. Cir. 2002). Here we must accept as true Warren's factual statements, such as: "[T]hey stuck the same needles in everybody's arms to draw blood[.]" And we must also accept as true his allegation of constructive knowledge because mixed questions of law and fact—such as negligence and constructive knowledge—are treated like factual issues for the purposes of Rule 12(b)(6). *See* FED. R. CIV. P. Form 9 (allowing conclusory allegation of negligence); *Blackmore v. Coleman*, 701 F.2d 967, 970 (D.C. Cir. 1983) (negligence and constructive knowledge both mixed questions of law and fact).

Our decision to reverse and remand leaves many issues open: whether the mistreatment Warren alleges actually occurred; whether the treatment that did occur violated his constitutional rights; whether any or all of the incidents fall

within the scope of the settlement we mentioned earlier; whether the District had actual or constructive notice of the violations or whether Warren can establish municipal liability under some other theory. We have nothing to say on these issues. We hold only that the complaint should not have been dismissed for failure to state a cause of action.

*Reversed and remanded.*