326 F.Supp.2d 68 (2004)
In re U.S. OFFICE PRODUCTS SECURITIES LITIGATION.
Todd Semon, et al., Plaintiffs,
v.
Jonathan Ledecky and U.S. Office Products Co., Defendants.
No. 99-0137, Civil Action Nos. 98-2731 (RMU), 98-2884(RMU), 98-3063(RMU), 98-0301(RMU), 98 Civ. 7871(SWK) (SDNY), 98 Civ. 8055(SWK) (SDNY), 98 Civ. 8200(SWK) (SDNY), 98 Civ. 8181(SWK) (SDNY), 98 Civ. 8417(SWK) (SDNY).
United States District Court, District of Columbia.
July 16, 2004.
*69 *70 Herbert Esar Milstein, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Cyrus Mehri, Mehri & Skalet, PLLC, Washington, DC, for Plaintiffs.
John Christopher Keeney, Jr., Hogan & Hartson, L.L.P., David Patrick Donovan, Wilmer, Cutler & Pickering, Washington, DC, for Defendants.

MEMORANDUM OPINION
URBINA, District Judge.

GRANTING THE DEFENDANTS' MOTIONS TO DISMISS

I. INTRODUCTION
This matter comes before the court on the defendants' motions to dismiss pursuant *71 to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The plaintiffs bring suit against defendants United States Office Products ("USOP") and its former Chief Executive Officer Jonathan Ledecky ("Ledecky") for damages arising out of a strategic restructuring carried out by USOP. Because the plaintiffs do not state with particularity facts giving rise to a strong inference that the defendants acted with an intent to deceive, do not state with particularity the circumstances constituting fraud or mistake and do not have standing for one of the counts, the plaintiffs fail to state a claim upon which relief can be granted. Accordingly, the court grants the defendants' motions to dismiss the plaintiffs' consolidated and amended class action complaint.

II. BACKGROUND

A. Factual History
The plaintiffs bring this action on behalf of themselves and other USOP stockholders who purchased or otherwise acquired USOP common stock and/or employee stock options through business transactions with USOP between June 5, 1997 and September 2, 1998 (the "Class Period") and who suffered a loss as a result of the alleged conduct of the defendants. Am. Compl. ("Compl.") ¶ 1. In 1997, USOP was one of the world's largest suppliers of office products and business services. Def. USOP's Mot. to Dismiss ("USOP Mot.") at 4. From its initial public offering in February 1995 through 1997, USOP grew by utilizing a "roll-up" strategy, that is, growth through the acquisition or merger with smaller companies. Id. Frequently, USOP would fund these acquisitions by using its own stock, which had the added benefit of allowing USOP to utilize the "pooling" method of accounting for the acquisitions. Compl. ¶ 19. The pooling method of accounting allows a purchasing company to avoid recording goodwill paid for acquisitions and instead allows the historical costs of the separate companies' assets and liabilities to be combined and become the recorded amounts of the combined company's assets and liabilities. Id. ¶ 27. During the class period, USOP completed 22 transactions under the pooling method. Id. ¶ 7.
In September 1997, the investment firm of Clayton, Dubilier & Rice ("CD & R") approached USOP with an investment proposal involving a sale and repurchase of stock, and a spin-off of parts of USOP. Id. ¶ 88. USOP's Board of Directors ("the Board"), however, decided at a October 1, 1997 meeting not to pursue the CD & R proposal. Id. In a November 5, 1997 press release, USOP announced the promotion of Thomas Morgan to President and Chief Executive Officer, replacing Ledecky. Id. ¶ 23. Despite record reported earnings in its fiscal year 1997 fourth quarter, and its fiscal year 1998 first quarter, USOP's stock price fell substantially between October of 1997 and December of 1997. USOP Mot. at 5. In the Board's opinion, the decline in stock price was mainly due to investor difficulty in valuing USOP stock because of the company's enormous diversification. Id. To combat this, on December 17, 1997, the Board authorized USOP to re-enter discussions with CD & R regarding another investment proposal. Am. Compl. ¶ 88. The Board explained that they re-entered negotiations with CD & R because Ledecky had informed them that he intended to step down from the position and because CD & R was willing to invest the same amount it proposed in September, despite the drop in USOP's stock price. Id. ¶ 48; USOP Mot. at 6.
On January 12, 1998, the Board decided to enter into a strategic restructuring plan *72 with CD & R. Compl. ¶ 63; USOP Mot. at 6. The central features of the restructuring plan entailed spinning off 4 divisions of USOP and CD & R investing $270 million in exchange for 24.9% of the shares of the restructured USOP. Id. In order to obtain a large enough block of shares for CD & R, the Board proposed that USOP engage in a $1 billion stock buyback of 37 million shares at $27 per share. Compl. ¶ 62; USOP Mot. at 6. In the event that USOP shareholders collectively tendered more than 37 million shares, each shareholder's tender would be prorated. USOP Mot. at 7.
On January 13, 1998, USOP issued a press release outlining the restructuring. Compl. ¶ 64. In the press release, USOP disclosed that as a result of the transactions contemplated by the restructuring plan, it would have to reclassify several prior acquisitions under the "purchase" method of accounting rather than the more favorable "pooling" method. Id. ¶ 67. The press release also disclosed that the effect of the accounting reclassifications would be to substantially lower earnings for the next two quarters. Id; USOP Mot. at 8. On May 28, 1998, USOP shareholders overwhelmingly approved the restructuring plan, which was completed on June 10, 1998. Compl. ¶ 92; USOP Mot. at 9. Unfortunately for USOP, the restructuring did not have the desired effect on its stock price. From June 10, 2003, the date the restructuring was complete, until two days before the amended complaint was filed, the stock price declined from $25.50 to $4.85. Compl. ¶¶ 100, 103. After the drop in stock price, the plaintiffs brought suit alleging that several prior financial disclosures and statements by Ledecky were false and misleading because USOP and Ledecky formed the intent to enter into a deal with CD & R earlier in 1997, knew that entering into the restructuring would cause USOP to have to restate earnings, and intentionally concealed their intentions in order to artificially keep the stock price high. See generally Compl.

B. Procedural History
On April 12, 1999, the Judicial Panel on Multi-district Litigation transferred six actions pending in the Southern District of New York to this court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. On July 29, 1999, the plaintiffs filed their amended complaint, asserting violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934 ("the Exchange Act"); breach of contract; and violations of sections 12(2) and 11 of the Securities Act of 1933 ("the Securities Act"). After the defendants filed their initial motion to dismiss, the court stayed the case on several occasions due to bankruptcy filings, MDL transfers and mediation efforts. Subsequently, the defendants filed renewed motions to dismiss. The court now turns to those motions.

III. ANALYSIS

A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss
A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. Browning v. Clinton, 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C.Cir.2003) (citing Fed R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define *73 more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48, 78 S.Ct. 99 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a legal theory." Krieger v. Fadely, 211 F.3d 134, 136 (D.C.Cir.2000) (internal quotation marks and citation omitted).
Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Warren v. District of Columbia, 353 F.3d 36, 37 (D.C.Cir.2004); Kingman Park, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations  including mixed questions of law and fact  as true and draw all reasonable inferences therefrom in the plaintiff's favor. Macharia v. United States, 334 F.3d 61, 64, 67 (D.C.Cir.2003); Holy Land Found. for Relief & Development v. Ashcroft, 333 F.3d 156, 165 (D.C.Cir.2003); Browning, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. Warren, 353 F.3d at 39; Browning, 292 F.3d at 242.

B. Legal Standard for a Rule 9(b) Motion to Dismiss
Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. Fed.R.Civ.P. 9(b). Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. Shields v. Wash. Bancorp., 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992); see also Kowal, 16 F.3d at 1279 n. 3 (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)); Vicom, Inc. v. Harbridge Merch. Services, 20 F.3d 771, 777-78 (7th Cir.1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987) (same).
Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 551-52 (D.C.Cir.2002); United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385 (D.C.Cir.1981). In other words, Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990), cert. den'd, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (requiring the pleader to provide the equivalent of a "first paragraph of any newspaper story"). Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim. Kowal, 16 F.3d at 1279 n. 3.
*74 That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. Id. at 1278 (citing Cannon, 642 F.2d at 1385); Fed.R.Civ.P. 8. Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked. Alicke v. MCI Communications Corp., 111 F.3d 909, 912 (D.C.Cir.1997); Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir.2002). Additionally, while the court must take as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. Kowal, 16 F.3d at 1278 (citing Wool v. Tandem, 818 F.2d 1433, 1439 (9th Cir.1987)); Shields, 1992 WL 88004, at * 7; see also One-O-One Enters., Inc. v. Caruso, 668 F.Supp. 693, 697-99 (D.D.C.1987), aff'd, 848 F.2d 1283 (D.C.Cir.1988) (explaining that the pleader must allege with particularity the alleged fraud to survive a Rule 9(b) motion). Finally, "[c]onclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b)." Shekoyan v. Sibley Int'l Corp., 217 F.Supp.2d 59, 73 (D.D.C.2002); see also In re Rockefeller Ctr. Props. Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir.2002) (noting that courts are not required to credit a complaint's bald assertions, legal conclusions or "legal conclusions draped in the guise of factual allegations")
Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend. See Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C.Cir.1996) (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). Accordingly, the court should reserve dismissal with prejudice for "extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." Shields, 1992 WL 88004, at *5.

C. The Court Dismisses Count I For Failure To Allege Facts Giving Rise to a Strong Inference that the Defendants Acted With Scienter

1. Legal Standard for Stating a Claim for Securities Fraud Under Rule 10b-5
Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated under Section 10(b) of the Exchange Act, "prohibits fraudulent activities in connection with securities transactions." Novak v. Kasaks, 216 F.3d 300, 305 (2d Cir.2000). "To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege that the defendant knowingly or recklessly made a false or misleading statement of material fact in connection with the purchase or sale of a security, upon which plaintiff reasonably relied, proximately causing his injury." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C.Cir.1994). Stated differently,
[A] plaintiff must allege (1) a material misstatement or omission, (2) made with scienter (an intent to deceive), (3) made in connection with the purchase of sale of a security, (4) furthered by the use of the mails or a national securities exchange, and (5) upon which plaintiff detrimentally relied.
IDT Corp. v. eGlobe Inc., 140 F.Supp.2d 30, 33 (D.D.C.2001) (citing Kowal, 16 F.3d at 1276). Finally, a claim under Rule 10b-5 must also satisfy Rule 9(b)'s requirement that the plaintiff state the circumstances constituting fraud with particularity. *75 Kowal, 16 F.3d at 1277-79 (holding that a Rule 10b-5 claim must be stated with particularity); In re Baan, 103 F.Supp.2d at 12 (same).
In 1995, Congress enacted the PSLRA to "prevent abusive and meritless lawsuits." H.R. Conf. Rep. No. 104-369 at 31 (1995). Toward that end, the PSLRA amended the Securities Exchange Acts of 1933 and 1934 to require that "with respect to each act or omission alleged to violate the chapter, state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Courts have described § 78u-4(b)(2) as requiring that a plaintiff must plead with particularity facts that establish a "strong inference" of scienter. E.g., Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 104 n. 2 (2d Cir.2003); In re Baan Co. Sec. Litig., 103 F.Supp.2d 1, 19 (D.D.C.2000). "There is no consensus among the courts as to how a `strong inference' of scienter may be established, and our Circuit has yet to rule on the issue." In re Baan, 103 F. Supp 2d at 19. The "most lenient standard" permissible under the PSLRA, however, is the Second Circuit's recognition that a plaintiff may plead scienter by alleging specific facts that either (1) constitute strong circumstantial evidence of conscious or reckless behavior or (2) establish a motive and opportunity to commit fraud. In re Digital Island Sec. Litig., 357 F.3d 322, 328-29 (3d Cir.2004); Rombach v. Chang, 355 F.3d 164, 176 (2d Cir.2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 620 (4th Cir.1999). The court concludes that regardless of which standard is adopted in this circuit, the plaintiffs in this case have not satisfied even the most lenient standard of demonstrating scienter.

2. The Plaintiff's Allegations
The crux of the plaintiff's argument on Count I is that Ledecky and USOP concealed an agreement to enter a restructuring plan with CD & R for at least 6 months until the plan was publically announced. Compl. ¶¶ 31-32; Pls.' Opp'n at 3. The plaintiffs argue that as a result of the concealment, several of the defendants' press releases, public statements and financial filings were false and artificially inflated the price of USOP's stock because the defendants knew that they were not entitled to use pooling accounting. Id. ¶¶ 20-24, 53-61. The plaintiffs further claim that even after the defendants announced the restructuring, they continued to misrepresent the benefits of and the costs of proceeding with the restructuring, which also artificially inflated USOP's stock price. Id. ¶¶ 61-91.
The plaintiffs make a host of allegations that they believe provide evidence that the defendants knowingly or recklessly misrepresented facts regarding earnings before the restructuring occurred. First, the plaintiffs note that under SEC Staff Accounting Bulletin ("SAB") No. 96, if a corporation undertakes a stock repurchase or spin-off of a substantial amount of assets within six months of a transaction accounted for under the pooling method of accounting, the SEC presumes that the stock repurchase or spin-off was planned at the time of the completion of the transaction. Compl. ¶ 107; Pls.' Opp'n at 4. Second, the plaintiffs note that the defendants are familiar with pooling accounting. Compl. ¶ 107. Third, the plaintiffs state that a director of CD & R did not respond to inquiries by Mail Boxes Etc. when it put itself up for sale. Id. ¶¶ 43, 107. Fourth, the plaintiffs point out that USOP acquired Mail Boxes Etc. during the period of time the defendants claim they broke off talks with CD & R. Compl. ¶¶ 50, 107. Fifth, the plaintiffs note that on December 16, 1997, the defendants claimed that "nothing had changed" at USOP. Id. at 54. Sixth, *76 the plaintiffs assert that the defendants' factual assertions regarding the timing of its decision to engage in the restructuring plan are implausible because of the speed at which the defendants completed the restructuring plans. Id. ¶ 107. Seventh, the plaintiffs assert that the timing and scope of Ledecky's negotiations with CD & R are suspicious. Compl. ¶ 107. Eighth, the plaintiffs' claim that the December 24, 1997 filing of Form 8-K contained false statements. Id. Finally, the plaintiffs allege that the defendants did not disclose the range of substantial restructuring costs until after the consummation of the restructuring. Id.

3. The Plaintiffs' Allegations Do Not Give Rise To a Strong Inference of Scienter
As noted, the plaintiffs' claim on Count I turns on the allegation that the defendants had secretly agreed to enter into the restructuring plan with CD & R well before the actual publically announced decision on January 13, 1998. The plaintiffs assert that "singularly and collectively," the facts they set forth give rise to a strong inference of the defendants' fraudulent intent. Pls.' Opp'n at 10. The court concludes that the plaintiffs' assertions do not establish strong circumstantial evidence that the defendants acted with scienter.[1] Rather, the plaintiffs simply make bare and conclusory assertions of fraudulent intent. The court examines each of the plaintiffs' allegations in turn.

a. SAB 96 and the Defendants' Knowledge of Pooling Accounting
It is true that because of the SEC's accounting presumption under SAB 96, the defendants' execution of the restructuring plan required them to restate earnings from 1997. USOP Mot. Ex. H. As a result of the SEC's presumption, after the defendants announced the restructuring, Generally Accepted Accounting Principles ("GAAP") prohibited USOP from using the pooling method of accounting for several of its acquisitions in 1997 and required USOP to restate earnings using the purchase method of accounting. Compl. ¶¶ 67, 77-78; Pls.' Opp'n at 4. Thus, argue the plaintiffs, the SEC's presumption constitutes evidence of the defendants' intention to enter into the restructuring plan earlier than it disclosed. Compl. ¶ 107; Pls.' Opp'n at 11-22. The plaintiffs, however, provide no caselaw to support their proposition that "[t]he presumption that a reacquisition of treasury stock (or announcement thereof) within six months of consummation of a business combination was a planned transaction that was part of the combination plan is rebuttable, not conclusive." Pls.' Opp'n at 14 (emphasis in the original). On the other hand, the defendants *77 cite persuasive authority that SAB 96 is "merely an arbitrary bright-line accounting rule." USOP Mot. at 33 (citing C.R.A. Realty Corp. v. Tri-South Invs., 738 F.2d 73, 76 (2d Cir.1984)) (noting that the SEC's presumption that insider profits resulting from short-swing trades must be disgorged does not indicate actual intent of the insider); Allis-Chalmers Mfg. Co. v. Gulf Western Indus., Inc., 527 F.2d 335, 347 (7th Cir.1975) (same). Because the burden of pleading lies with the plaintiffs, the court does not consider the defendants' restatement of earnings required by SAB 96 as supporting a strong inference of scienter. Levitt, 340 F.3d at 104 n. 2; In re Baan Co. Sec. Litig., 103 F.Supp.2d at 19. Moreover, a "mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter." Abrams v. Baker Hughes, Inc., 292 F.3d 424, 432 (5th Cir.2002); In re Baan Co. Sec. Litig., 103 F.Supp.2d at 20 (same). Accordingly, the fact that the defendants had to restate earnings pursuant to an SEC rule does not give rise to a strong inference of scienter.
The defendants' knowledge of pooling accounting also does not support any inference regarding the defendants' scienter. As the plaintiffs themselves admit, the pooling method of accounting and the purchase method of accounting "are not alternatives." Pls.' Opp'n at 12 (citing Accounting Principles Board Opinion No. 16). In other words, if in 1997 the defendants did not intend to enter into the restructuring plan, they were required to use pooling accounting for their business acquisitions from June through December 1997. The defendants' knowledge of pooling accounting would be relevant only if the court assumed the fact the proposition is offered to prove, namely, that the defendants had secretly already decided to enter into the restructuring agreement with CD & R in 1997. The court concludes that the mere fact that the defendants were familiar with pooling accounting does not support any inference of scienter. Levitt, 340 F.3d at 104 n. 2; In re Baan Co. Sec. Litig., 103 F.Supp.2d at 19.

b. The Failure of CD & R to Respond to Mail Boxes Etc.'s Inquiries; Completion of the Mail Boxes Etc. Merger and the Consolidated Capital Initial Public Offering
The plaintiffs contend that CD & R's lack of interest in purchasing Mail Boxes Etc. is suspicious because CD & R owned a significant portion of Mail Boxes Etc.'s chief competitor, and eventually acquired Mail Boxes Etc. through its investment in USOP. Compl. ¶ 43. The plaintiffs argue that because CD & R did not respond to Mail Boxes Etc.'s inquiries regarding a possible strategic partnership, CD & R must already have intended to enter into the restructuring plan with USOP. Id.; Pls.' Opp'n at 22-23.
The court disagrees. All the plaintiffs have done is state a historical fact  that CD & R did not respond to Mail Boxes Etc.'s inquiry  and then assert that CD & R did not respond because they were already in negotiations with the defendants. From that fact and bare assertion, the plaintiffs take the further leap that the defendants intentionally misrepresented the timing of their discussions with CD & R. Compl. ¶ 43; Pls.' Opp'n at 23 n. 19. "[A] pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that the defendants acted recklessly or with fraudulent intent." Rombach, 355 F.3d at 176 (internal quotations omitted); see also In re Navarre Corp. Sec. Litig., 299 F.3d 735, 742 (8th Cir.2002) (holding that a "mere allegation" of fraud is insufficient to survive a motion to dismiss pursuant to the PSLRA). The *78 plaintiffs do not any allege any facts that set forth circumstantial evidence of intent such as who at USOP and CD & R hatched the plot to intentionally conceal the restructuring plan, when the conspiracy was formed, or specific instances where the defendants agreed with CD & R to keep their negotiations secret. Thus, the court concludes that the failure of CD & R to respond to Mail Boxes, Etc.'s inquiry is not probative of scienter. Rombach, 355 F.3d at 176.
Next, the plaintiffs assert that the defendants kept ongoing negotiations with CD & R secret because if they admitted that they were still in talks with CD & R, Mail Boxes Etc. would back out of the merger with USOP due to both the unavailability of pooling accounting and the fact that Ledecky wished to leave USOP to focus on other ventures such as Consolidated Capital. Compl. ¶ 107. These allegations add nothing to the plaintiffs' case. Once again, the plaintiffs simply make factual statements and then conclusorily assert that the defendants concealed negotiations with CD & R. For the same reasons as in the above paragraph, the court does not consider these allegations probative of scienter. Rombach, 355 F.3d at 176; In re Navarre, 299 F.3d at 742.

c. The Defendants' December 16, 1997 Denial of Any Change at the Company; the Subsequent Speed At Which the Defendants' Negotiated the Restructuring; the Orchestration of the Timing and Scope of Negotiations with CD & R by Ledecky
In a December 16, 1997 conference call with securities analysts and investors which was prompted by a drop in USOP's stock price, the defendants indicated that nothing had changed at USOP and that USOP had no plans to lower earnings estimates. Compl. ¶ 57. The defendants state that on December 17, 1997, the Board authorized management to renew discussions with CD & R regarding restructuring. USOP Mot. Ex. A-14 at 17. The plaintiffs argue that the defendants must already have had the restructuring plans in place because  according to the defendants recitation of the facts  most of the restructuring plan was devised in approximately four weeks. Pls.' Opp'n at 23-27. The plaintiffs note that the defendants claim that details of the restructuring plan were negotiated between December 17, 1997 and January 13, 1998. Compl. ¶¶ 49, 107. The plaintiffs then suggest that the speed at which the defendants purport to have negotiated the restructuring is implausible and demonstrates the defendants' deceit. Id. ¶ 107; Pls.' Opp'n at 24-25. The plaintiffs also allege that if a hiatus in the CD & R negotiations actually occurred, it must have been at the direction of Ledecky, not the Board. Id. at 25.
The court fails to see how these allegations give rise to a strong inference of scienter. First, the defendants' December 16, 1997 denial of any change at the company would only be indicative of fraud if the court assumed that the defendants were lying about the date it decided to enter into the restructuring. The plaintiffs' allegation, once again, is simply a factual statement coupled with a conclusory allegation that the defendants acted with fraudulent intent. This pleading technique is insufficient to adequately allege scienter. Rombach, 355 F.3d at 176.
Similarly, the plaintiffs point to several occasions where Ledecky made statements of his intent to remain with USOP and to not sell shares of USOP as examples of false and misleading representations. E.g., Compl. ¶¶ 53-55, 58-59, 71, 84. These statements also fail to give rise to a strong inference of scienter because the *79 plaintiffs simply assert that Ledecky acted with fradulent intent. None of the facts on their own support a conclusion of false motives. For instance, the plaintiffs take exception to Ledecky's statement that "U.S. Office Products remains a top priority for me moving forward. I continue to own all of my original stock and stock options, and remain confident about the Company's prospects." Compl. ¶ 53. The plaintiffs do not allege any facts that would demonstrate that, at the time of the statement, Ledecky did not consider USOP to be a priority or that he, in fact, had sold some of his original shares. Rather, the plaintiffs that argue that because Ledecky ultimately did sell some of his shares and leave USOP, his statement was false and misleading. Courts have uniformly rejected this pleading of "fraud by hindsight." In re Rockefeller Center Props., 311 F.3d at 225; Novak, 216 F.3d at 309. Like USOP's December 16, 1997 denial of any change at the company, Ledecky's statements would only be false and misleading if the court assumed that Ledecky had already decided to enter into the restructuring plan with CD &R  the very fact Ledecky's statements are offered to prove. These allegations are not probative of scienter. Rombach, 355 F.3d at 176.
The plaintiffs' assertion regarding the speed with which the defendants negotiated, documented, and sought necessary approvals for the restructuring also does not evidence a strong inference of scienter. The plaintiffs simply claim that the defendants' version of the facts  that the defendants negotiated the restructuring over a four week period  is "dubious." Compl ¶ 49; Pls.' Opp'n at 25. The plaintiffs suggestion that the defendants are lying about the speed in which they were able to negotiate the restructuring, without more, is complete speculation. A claim of securities fraud cannot rest on such speculation. Rombach, 355 F.3d at 176; Phillips, 190 F.3d at 615; In re Comshare Inc. Sec. Litig., 183 F.3d 542, 553 (6th Cir.1999). For instance, in Phillips, a case where the 4th Circuit affirmed the dismissal of a Rule 10b-5 claim, the transaction at issue was a $4.4 billion merger. Phillips, 190 F.3d at 612. In that case, the court indicated that the merger was negotiated over a three-week period. Id. at 612-13. Moreover, the defendants never claimed that every aspect of the restructuring was finalized by January 13, 1998. In fact, the defendants' January 13, 1998 Press Release specifically disclosed that the restructuring was "subject to a number of conditions, including financing, approval of USOP shareholders, receipt of regulatory approval, and completion of certain business reviews by CD & R." USOP Opp'n Ex. A-8 at 2. Thus, the fact that the defendants claim to have negotiated some or most of the restructuring over a four week period is not probative of scienter.
Finally, the plaintiffs claim that the "much more plausible scenario" is that if there actually was a hiatus in the defendants' negotiations with CD & R between October and December of 1997, "it was done at the direction of Ledecky" because "[h]e knew that if he allowed discussions between CD & R and USOP to continue uninterrupted before consummation of the [Mail Boxes Etc.] acquisition in November 1997, [Mail Boxes Etc.] would have the right to terminate the Merger Agreement." Pls.' Opp'n at 25. Again, the plaintiffs' sheer speculation and conclusory allegation that Ledecky orchestrated a false hiatus in the negotiations between USOP and CD & R is insufficient to support a strong inference of scienter. Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir.2001); Phillips, 190 F.3d at 615; In re Comshare, 183 F.3d at 553.

d. The Restatement of Earlier Financial Information
The plaintiffs next point to the fact that USOP restated financial information contained *80 in the December 24, 1997 Form 8-K. Compl. ¶ 107; Pls.' Opp'n at 29. The plaintiffs allege that USOP, in its March 12, 1998 Form 8-K, reversed the increased net income for fiscal year 1997 that was reported in the December 24, 1997 Form 8-K and that the defendants disclosed the costs of the restructuring only after the restructuring was consummated. Pls.' Opp'n at 28-30. According to the plaintiffs, the defendants purposefully did not report the costs of the restructuring plan in the December 24, 1997 Form 8-K because the defendants wished to falsely portray the restructuring as a positive corporate development. Compl. ¶ 69.
Once again, the plaintiffs employ circular reasoning. The restatement of financial earnings would only be fraudulent if the defendants had already formed an intent to engage in the restructuring as of December 24, 1997. But, in a failed attempt to "prove" the defendants' intent, the plaintiffs only point to the fact that the defendants restated financial information. Thus, the plaintiffs' allegations that the restatement of financial information is evidence of fraud is purely conclusory and does not support a strong inference of scienter. Kalnit, 264 F.3d at 140; Phillips, 190 F.3d at 615; In re Comshare, 183 F.3d at 553.

e. Disclosure of Restructuring Costs Immediately Following Consummation of the Restructuring
Finally, the plaintiffs assert that the defendants disclosed the true costs of the restructuring only after the deal was consummated. Compl. ¶ 107; Pls.' Opp'n at 36. In addition, the plaintiffs claim that the timing of the disclosure is evidence of scienter because projections of the cost of the restructuring "must have been prepared by USOP and CD & R in advance of the execution of the investment agreement." Compl. ¶ 68. According to the plaintiffs, the failure to disclose the costs of the restructuring earlier misled investors because once the costs were disclosed, the defendants had to restate financial information by lowering previous earnings statements. Compl. ¶ 67. Plainly, the proposition that the defendants "must have" prepared and deliberately withheld from the public a cost analysis of the restructuring is completely speculative and conclusory, and does not support evidence of scienter. Kalnit, 264 F.3d at 140; Phillips, 190 F.3d at 615; In re Comshare, 183 F.3d at 553. Moreover, "mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." In re Comshare, 183 F.3d at 553 (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir.1995)).

D. The Court Dismisses Count III of the Complaint For Failure to Plead Fraud With Particularity
The plaintiffs also bring claims under section 14(a) of the Exchange Act and SEC Rule 14a-9, which prohibit solicitation of a proxy by a statement that contains a false or misleading fact or the omission of a material fact that makes any portion of the statement misleading. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9. "To prevail on a Section 14(a) claim, a plaintiff must show that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff's injury and (3) that the proxy solicitation ... was an essential link in the accomplishment of the transaction." 295 F.Supp.2d 75, 81-82 (D.D.C.2003) (internal quotations omitted). In a non-precedential opinion, the 3rd Circuit concluded that the heightened pleading standard of the PSLRA applied to 14(a) claims, but no other circuit has so held. 65 Fed.Appx. 856, 864, 2003 WL 21246539, at *6 (3d Cir.2003). Furthermore, although the District *81 of Columbia Circuit has not addressed the issue, many courts have held that when a Section 14(a) claim sounds in fraud, Rule 9(b) applies. Shapiro v. UJB Financial Corp., 964 F.2d 272, 287 (3d Cir.1992); Union of Needletrades, Indus. & Textile Employees v. May Dep't Stores Co., 26 F.Supp.2d 577, 583 (S.D.N.Y.1997); Hershey v. MNC Financial, Inc., 774 F.Supp. 367, 375 n. 9 (D.Md.1991). The court agrees that because the plaintiffs' allegations with regard to Count III sound in fraud, Rule 9(b)'s requirement of particularity applies.
In the instant case, the plaintiffs allege that the proxy statement is materially misleading because (1) it did not disclose the full financial impact of the restructuring; (2) the defendants provided a false reason for the restructuring; (3) the defendants' reference to a hiatus in negotiations with CD & R was false; and (4) the defendants failed to file Schedule 3.01(d) to the Investment Agreement between USOP and CD & R, which provided information about potential reductions in the exercise price of warrants to be issued to CD & R. Compl. ¶¶ 85-91. The defendants counter by asserting that all of the plaintiffs' allegations are conclusory and unparticularized. USOP Mot. at 48-52; Def. Ledecky's Mot. to Dismiss at 23-26.
The defendants are correct. With regard to the claim that the defendants did not disclose the full impact of the restructuring, instead of pleading the "who, what, when, where, and how" of the fraudulent scheme, the plaintiffs simply resort to stating that the "[d]efendants must have prepared projections and forecasts as to the financial impact of the Restructuring[.]" Compl. ¶ 87. Similarly, the plaintiffs' statements that "the reasons for the Restructuring were materially false and misleading, as defendants knew" and "[t]he representations in the Proxy Statement as to the postponement of CD & R's investment in the Company were similarly false because there was no hiatus in negotiations with CD & R" are nothing more than "conclusory allegations that the defendants' actions were fraudulent." Compl. ¶ 90; Shekoyan, 217 F.Supp.2d at 73. Accordingly, the plaintiffs fail to satisfy the requirements of Rule 9(b) with respect to count III. Id.; In re Rockefeller Ctr., 311 F.3d at 216. As far as the defendants' allegations regarding the omission of Schedule 3.01(d), the price of CD & R's warrants would only be reduced if USOP later issued securities that it was required to, but did not disclose on Schedule 3.01(d). USOP Mot. Ex. A-14 at B-34. The plaintiffs did not allege that USOP participated in any transactions it was supposed to disclose on the Schedule 3.01(d), therefore, the omission of Schedule 3.01(d) does not support a violation of Rule 14a-9.

E. The Court Dismisses Count IV Because the Plaintiffs Lack Standing
Plaintiffs Raven's Woods and De Sio assert that former shareholders of Mail Boxes Etc. have a claim for breach of contract because the defendants failed to inform them that the Mail Boxes Etc./USOP merger would not qualify for use of the pooling of interests method of accounting. Compl. ¶¶ 119-131. Like the plaintiffs allegations of securities fraud, this count is premised on the assumption that at the time of the merger, the defendants and CD & R had already decided to enter into the restructuring agreement. The defendants argue that former shareholders of a company that is merged out of existence do not have standing to bring individual claims against the surviving corporation. USOP Opp'n at 53-54.
The plaintiffs do not dispute the fact that the parties to the merger contract were Mail Boxes Etc. and USOP, *82 not the individual shareholders of Mail Boxes Etc. Compl. ¶ 120. Neither party directs the courts attention to, and the court's own research has not revealed, any caselaw on the issue of whether shareholders of a non-surviving corporation may commence a direct action for breach of a merger contract against a surviving corporation. Generally, however, "[w]hen an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively in behalf of the corporation." Cowin v. Bresler, 741 F.2d 410, 414 (D.C.Cir.1984) (quoting Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del.1970)). Moreover, allegations of misdeeds such as the ones plaintiffs Raven's Wood and De Sio advance in Count IV are properly actionable under laws prohibiting securities fraud, such as SEC Rule 10-b which "prohibits fraudulent activities in connection with securities transactions." Novak, 216 F.3d at 305. Plaintiffs Raven's Wood and De Sio purport to bring Count IV of the complaint on behalf of all former Mail Boxes Etc. shareholders. Compl. ¶ 17(c). Accordingly, the court dismisses court IV for failure to state a claim on which relief can be granted. Warren, 353 F.3d at 37.[2]

F. The Court Dismisses Counts V and VI for Failure to Plead Fraud With Particularity
In Count V, the plaintiffs allege that the defendants violated section 12(a)(2) of the Securities Act by soliciting the sale of a security by means of a prospectus that misrepresents or omits material facts. 15 U.S.C. § 77l(a)(2). In Count VI, the plaintiffs allege that the defendants violated Section 11 of the Securities Act by disseminating a registration statement that contained false and misleading statements and failed to state material facts. 15 U.S.C. § 77k. Moreover, Counts V and VI "repeat[ed] and reallege[d]" all previous paragraphs in the complaint "as if fully set forth herein." Compl. ¶¶ 132, 144.
Again, the D.C. Circuit has never stated whether Rule 9(b)'s requirement of particularity applies to claims of violation of Sections 11 and 12(a)(2) of the Securities Act. Several circuits, however have applied the particularity requirements of Rule 9(b) to Section 11 and 12(a)(2) claims that sound in fraud. Rombach, 355 F.3d at 170 (applying Rule 9(b) to claims brought under Section 11 and 12(a)(2) that are "premised on averments of fraud"); Falkowski v. Imation Corp., 309 F.3d 1123, 1133 (9th Cir.2002) (same); Melder v. Morris, 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) (same); Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288 (3d Cir.1992) (same). Once it is established that Rule 9(b) applies to claims under Sections 11 and 12(a)(2), it is clear why the court must dismiss the plaintiffs' claims. By now the plaintiffs' allegations in Counts V and VI are a familiar refrain. The plaintiffs do not add any more particularized facts that would support a finding of fraud. Count V alleges that the prospectus portion of the registration statement was false and misleading because the defendants "knew at the time they filed the Registration" that they were going to enter into the restructuring with CD & R, but withheld the information from the plaintiffs. Compl. ¶ 138. Similarly, Count VI simply states that the registration statement contained untrue statements of *83 material fact. Id. ¶ 145. The mere recasting of the fact  deficient allegations in Counts I and III of the complaint does not satisfy Rule 9(b)' s requirement of particularity for the plaintiffs' claims under Sections 11 and 12(a)(2). Because Counts V and VII simply realleged all of the preceding paragraphs in the complaint and did not add any new specific facts, the court dismisses Counts V and VI of the complaint. Kowal, 16 F.3d at 1278.

G. The Court Dismisses Counts II and VII Due to the Absence of a Primary Violation
Finally, Counts II and VII of the complaint assert claims against Ledecky under Section 20(a) of the Exchange Act and Section 15 of the Securities Act pursuant to Ledecky's alleged status as a control person over USOP. Compl. ¶¶ 112, 151. Both of these claims are predicated on an underlying primary violation of securities law by a controlled person. Rombach, 355 F.3d at 177-78. Because the court has dismissed all of the claims against USOP, there can be no violation of Section 20(a) or Section 15. Id. Accordingly, the court dismisses all claims against Ledecky as well. Warren, 353 F.3d at 37.

IV. CONCLUSION
For the foregoing reasons, the court grants the defendants' motions to dismiss. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of July, 2004.
NOTES
[1] In a footnote, the plaintiffs assert that they also demonstrate scienter by motive and opportunity. Pls.' Opp'n at 8 n. 2. The plaintiffs claim that Ledecky "desired to extract a sufficient profit from his USOP investment, to enable him to move on to other ventures[.]" Id. Courts have routinely rejected the notion that a plaintiff can demonstrate adequate motive and opportunity by pointing to a desire to increase compensation or to make a corporation appear profitable because such a motive can be imputed to all corporate officers. E.g., Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir.2001); Phillips, 190 F.3d at 622-23; In re Baan, 103 F.Supp.2d at 19-20. Rather, the plaintiff must allege more, such as "[i]nsider sales `in suspicious amounts or at suspicious times[.]' "In re Baan, 103 F.Supp.2d at 19. In the instant case, the plaintiffs concede that they "do not allege that the Buyback constituted insider trading on the part of Ledecky." Pls.' Opp'n at 8-9 n. 5. Rather, Ledecky tendered his shares pursuant to the Buyback, just like any other USOP shareholder could have done. Compl. ¶ 93. Thus, the court concludes that the plaintiffs have not established scienter through pleading motive and opportunity.
[2] Even if the court concluded that plaintiffs Raven's Wood and De Sio could bring a cause of action against the defendants for breach of contract, as noted, the plaintiffs claim is based on allegations of fraud. Compl. ¶ 119-131. The plaintiffs would not satisfy Rule 9(b) because the allegations of fraud in Count IV are conclusory. Shekoyan, 217 F.Supp.2d at 73.